# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

LADY DI'S, INC., on behalf of itself and all )
others similarly situated, )
     Plaintiff, )
        )
vs. )    1:09-CV-340-SEB-DML
        )
ENHANCED SERVICES BILLING, INC., )
and ILD TELECOMMUNICATIONS, INC. )
d/b/a ILD TELESERVICES, INC., )
     Defendants. )

## ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Lady Di's, Inc. ("Plaintiff") brought this diversity of citizenship lawsuit against Defendants Enhanced Services Billing, Inc. ("ESBI") and ILD Telecommunications, Inc. d/b/a ILD Teleservices, Inc. ("ILD") on state law claims of unjust enrichment and commercial deception pursuant to I.C. 24-5-19-1 *et. seq.*[1]  Before the Court currently pend several related motions:  1)  Plaintiff's Motion for Class Certification [Docket No. 63]; 2)  Defendants separate Motions for Summary Judgment [Docket Nos. 82, 139];  3)  Plaintiff's request that a ruling on summary judgment be deferred pending a determination by the Court of its Motion for Class Certification

---

[1]Originally, Plaintiff also alleged that Defendants' actions constituted constructive fraud. This claim was dismissed against ILD, however, for failure to allege facts sufficient to support a relationship creating a duty between the parties and reasonable reliance on an alleged misrepresentation. [Docket 112].  Given that decision, Plaintiff has abandoned its constructive fraud claim against ESBI as well.  Pl. Opp. MSJ at 5.

[Docket No. 100]; and 4) Defendant ESBI's request for oral argument on the issues raised in the parties' briefing as to class certification and summary judgment issues [Docket No. 146]. For the reasons detailed herein, Defendant ESBI's request for oral argument is <u>DENIED</u>,[2] Plaintiff's Motion for Class Certification is <u>DENIED</u>, and both Defendants' Motions for Summary Judgment are <u>GRANTED</u>. Because the Court has addressed Plaintiff's motion for class certification first, pursuant to the general rule in the Seventh Circuit,[3] Plaintiff's request for deferred judgment on the merits is <u>DENIED as MOOT</u>.

**BACKGROUND**

ESBI is a Delaware corporation with its principal place of business in San Antonio, Texas. Compl. ¶ 8. ILD is a Delaware corporation with its principal place of

---

[2]Because we are able to reach our decision based on the parties' written submissions, oral argument on the issues before us is unnecessary.

[3]The Seventh Circuit has indicated that class certification should generally be considered prior to a decision on the merits of the case. <u>Larson v. JPMorgan Chase & Co</u>, 530 F.3d 578, 581 (7th Cir. 2008)("All doubts would have been dispelled had the district judge certified [a class] before granting summary judgment, as he should have done anyway")(citing Fed. R. Civ. P. 23(c)(1)); <u>Weismuller v. Kosobucki</u>, 513 F.3d 784, 784 (7th Cir. 2008) ("in this case the plaintiff, as well as the district judge, put the cart before the horse, by moving for class certification after moving for summary judgment."); <u>Bertrand ex rel. Bertrand v. Maram</u>, 495 F.3d 452, 455 (7th Cir. 2007); <u>Bieneman v. City of Chicago</u>, 838 F.2d 962, 964 (7th Cir. 2008)("it is . . . difficult to imagine cases in which it is appropriate to defer class certification until after a decision on the merits.")). This "is not to say that [the trial court] may never dismiss a case on summary judgment without first ruling on the plaintiff's motion to certify a class." <u>Weismuller</u>, 513 F.3d at 787. In <u>Cowen v. Bank United of Texas, FSB</u>, the Seventh Circuit condoned the district court's initial decision on the merits of the case because "the ground on which the district court threw out the plaintiff's claims would apply equally to any other member of the class." 70 F.3d 937, 941-42 (7th Cir. 1995). However, we are not faced with such a situation here and, thus, we have followed the "general rule" to consider class certification first.

business in Ponte Vedra Beach, Florida.  Compl. ¶ 9.  The Complaint describes ESBI and

ILD as "billing aggregator[s] that bill[] persons and entities directly, or through local

telephone companies, for services that are purportedly provided by other vendors."

Compl. ¶¶ 8-9.  As explained by Plaintiff, third-party vendors use billing aggregators,

such as Defendants, to prepare charges to be included in the vendors' customers'

telephone bills and to collect payments for those charges.  Compl. ¶ 26.  Consequently,

the vendor is three steps removed from the customer.  Id.  When the customer pays the

bill, the payment flows from the telephone company to a billing aggregator, such as

Defendants, and ultimately on to the third-party vendor.  Id.  The billing aggregators

withhold a percentage of these payments to the vendors in return for their services.  Id.

Plaintiff is an Indiana corporation and an AT&T customer.  Compl. ¶¶ 7, 28.

Plaintiff's October 2008 monthly telephone bill from AT&T included a $49.99 charge

that came through ILD described as "ADVANCED BUS. SVCS, LLC-EFAX SVC

MTHLY."  Id.  The vendor from whom ILD forwarded that billing data was Advanced

Business Services ("ABS").  ILD Mem. in Support of MSJ ¶ 4.  The Plaintiff's October

2008 bill contained a second charge that came through ESBI for $42.75 described as

"MYLOCALREACH-ONLINE YP LISTNG MTH FEE."  Compl. ¶¶ 7, 28.  The vendor

whose billing data ESBI forwarded was My Local Reach ("MLR").  Pl.'s Mem. in

Support of Class Certification at 5.  Plaintiff alleges that it had not authorized either of

these charges on the AT&T billing statement.  Compl. ¶¶ 7, 29.  Plaintiff asserts that

ESBI and ILD "instructed AT&T to include [these] charges on the telephone bills of the

Plaintiff and other telephone customers, when [they] knew or should have known that the charges were not expressly authorized by Plaintiff or the other telephone customers." Compl. ¶¶ 8-9.

After discovering the charges on its telephone bill, Plaintiff contacted AT&T's service department to seek a refund. Compl. ¶ 31. AT&T refused to issue Plaintiff a refund and instructed Plaintiff to contact ESBI and ILD directly. Id. Plaintiff's Complaint alleges that its attempts to contact both ESBI and ILD came to naught when ESBI refused to refund the charges and ILD never returned Plaintiff's telephone call. Compl. ¶¶ 32-33. The evidence shows, however, that Plaintiff ultimately received two refunds: the first in the amount of $199.75 relating to the ESBI charges, and the other for $299.70 relating to the ILD charges. (Lady Di December 2008 AT&T Bill; Lady Di February 2008 AT&T Bill; Markin-Venn Dep. at 67-68, 95-96.) According to Plaintiff's Complaint, Lady Di paid the entire October 25, 2008, bill prior to discovering the unauthorized charges. Compl. ¶ 34. However, the deposition testimony of Plaintiff's President and Rule 30(b)(6) representative, Ms. Markin-Venn, shows that she disputed the charges initially and only subsequently paid the entire AT&T bill. Markin-Venn Dep. at 47-53 (Q: "Had you already paid [the bill] when you reviewed it?" A: "I don't think so, no, because I call [sic] them up and said, 'What is this?'. . . .").[4]

---

[4]At one point, Ms. Markin-Venn testified that she could not recall whether she disputed the charges from ESBI and ILD before or after she paid her AT&T bill. Markin-Venn Dep. at 50. However, despite some initial inconsistencies, her testimony considered as a whole establishes that the payment occurred after she had disputed the charges.

Plaintiff alleges that the Defendants' actions constitute "cramming," a practice defined by the Federal Communications Commission ("FCC") as the placement of unauthorized charges on telephone bills. Compl. ¶ 19. Indiana Code § 8-1-29-5 provides that "[a] customer of a telecommunications provider may not be . . . billed for services by a telecommunications provider that without the customer's authorization added the services to the customer's service order." Indiana Administrative Code tit. 170 r. 7-1.1-19(p) ("Administrative Code") provides: "No . . . billing agent acting for . . . a PIC [provider of long distance telecommunications services] or LEC [provider of switched telecommunications service that carries calls originating and terminating within the local call area] shall bill a customer for any service unless the PIC, LEC, or billing agent possesses written or electronic documentation [that meets various criteria.]" Plaintiff alleges that Defendants failed to possess evidence of such authorization as required by Indiana law. Compl. ¶¶ 22-23. Rather than framing its cause of action pursuant to the aforementioned sections of the Indiana Code, however, Plaintiff has brought its claims based on theories of common law unjust enrichment and commercial deception pursuant to I.C. § 24-5-19-3.

## I.    Class Certification

Plaintiff seeks to certify the following classes, referred to respectively as the "ESBI Class" and the "ILD Class."

> All persons or entities in Indiana who paid any charges during the six years preceding the filing of this action that were included on their local telephone bills at the direction of ESBI and for which ESBI did not possess, and did not

deliver to such persons' or entities' local telephone company, written or electronic documentation showing the name of the customer requesting the services, a description of the service requested by the customer, the date on which the customer requested the service, the means by which the customer requested the service, and the name, address, and telephone number of all sales agents involved.

All persons or entities in Indiana who paid any charges during the six years preceding the filing of this action that were included on their local telephone bills at the direction of ILD and for which ILD did not possess, and did not deliver to such persons' or entities' local telephone company, written or electronic documentation showing the name of the customer requesting the services, a description of the service requested by the customer, the date on which the customer requested the service, the means by which the customer requested the service, and the name, address, and telephone number of all sales agents involved.

This language clearly tracks the provisions of the Indiana Administrative Code. In addition to certification of these two classes, Plaintiff further requests that the Court designate it as the representative of both classes and its counsel as counsel for both classes.

To prevail on its motion for class certification, Plaintiff must satisfy all of the familiar threshold requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequate representation. If successful in that regard, Plaintiff must satisfy the final requirement by showing that the circumstances of this case fit one of the three "types" of class actions as defined by Rule 23(b).

Here, Plaintiff maintains that all four Rule 23(a) requirements are met and that certification under Rule 23(b)(3) is appropriate, which provides that a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action

is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Common questions of law or fact predominate when they "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." In Re Bromine Antitrust Litig., 203 F.R.D. 403, 412 (S.D. Ind. 2001). Rule 23(b)'s predominance inquiry is more demanding than Rule 23(a)'s commonality requirement. Wahl v. Midland Credit Management, Inc., 243 F.R.D. 291, 299 (N.D. Ill. 2007). Here, Plaintiff must establish that the common questions of law or fact predominate with respect to the elements of the unjust enrichment and commercial deception claims as applicable to both subclasses of plaintiffs.

Plaintiff maintains that "the claims of the Plaintiff and the members of each Class are bound together by a basic factual scenario subject to common, class-wide proof." Pl.'s Mem at 23. This "basic factual scenario," according to the Plaintiff, is Defendants' placement of charges "on the telephone bills of Plaintiff and the Classes for which ESBI and ILD did not possess, and did not forward to local telephone companies, written or electronic documentation as required by Indiana law." Id. ESBI and ILD respond that in determining liability the Court will be required to make individual determinations for each proposed class member with regard to whether that member authorized the charges for which he/she was billed by Defendants, whether that authorization was done knowingly, and whether the member utilized the services for which he/she was charged or otherwise benefitted. Defendants further argue that any common questions of law or fact will not predominate over these individualized inquiries. For the reasons discussed below, we agree with Defendants

that class certification would be inappropriate under the circumstances of this case.

Plaintiff's proposed classes conflate the requirements of the Indiana Administrative Code IAC § 7-1.1-19(p) which it alleges Defendants violated, with the common law claim of unjust enrichment and the statutory claim of commercial deception. Had Plaintiff framed its causes of action based on Defendants' failure to comply with the Administrative Code's possession requirement, Plaintiff's lawsuit would implicate the practices of each Defendant rather than focusing on the actions of individual class members. But Plaintiff's Complaint does not allege a cause of action pursuant to the Administrative Code. Rather, as we have noted, it asserts claims of unjust enrichment and deceptive practices – claims which do not typically lend themselves to a showing that common questions of law or fact predominate over the individual issues.

In <u>Brown v. SBC Communications, Inc., et al.</u>, 2009 U.S. Dist. LEXIS 7987 (S.D. Ill. Feb. 4, 2009), a case markedly similar to the one before us (in fact, that case involved the same defendants, the same cramming allegations, and the same unjust enrichment and state law commercial deception claims), the trial court denied Plaintiff's request for class certification. In finding that questions of law or fact common to class members did not predominate over individual issues of authorization for the billed services, the court explained:

> [T]he Court will need to make individual determinations as to whether each proposed class member authorized the charges for which he was billed by defendants. The result will be multiple mini-trials, each requiring individual proofs. Consequently, there will be no judicial economy realized from certifying this action as a class action. Defendants contend that [named

Plaintiff], himself, does not qualify as a class member because the services for which he was billed were actually authorized by him. The Court will not address the merits of that argument here. However, the evidence presented by both sides as to whether the charges were actually authorized, whether such authorization was done knowingly, and whether [named Plaintiff] utilized the services for which he was charged, is a good indication of the type of evidence the Court may expect to weigh for each and every potential class member.

2009 U.S. Dist. LEXIS 7987 at *9-10. Thus, based on the <u>Brown</u> Court's finding that customer authorizations would defeat claims of unjust enrichment and statutory deception under Illinois law, the Court ruled that common questions of law or fact would not predominate over such individualized inquiries.

The only salient difference between <u>Brown</u> and the case before us seems to be that our Plaintiff may be able to derive some evidentiary benefit from of the fact that the complained of conduct by Defendants constitutes a violation of the Administrative Code. <u>See</u> <u>Austin Lakes Joint Venture v. Avon Utilities, Inc.</u>, 648 N.E.2d 641, 649 (Ind. 1995) (holding that the defendant's failure to comply with the regulation at issue in that case "was simply a fact or evidence in support of [the plaintiff's] claim of breach of contract and fraud."). However, were we to certify the classes as Plaintiff requests, the action would essentially equate a violation of the Administrative Code with unjust enrichment and commercial deception. We disagree that a violation of the Administrative Code is tantamount to claims for unjust enrichment and commercial deception, and thus we decline to certify these classes which seek to pursue such relief.

To recover under a theory of unjust enrichment, a party must show that a measurable

benefit has been conferred on a party under such circumstances that retention of the benefit without payment would be unjust.  Stoneware, Inc. v. TecServ, Inc., 2009 U.S. Dist. LEXIS 119624, *26 (S.D. Ind. Dec. 21, 2009) (J. Barker)(citing Dominiack Mechanical, Inc. v. Dunbar, 757 N.E.2d 186, 190 (Ind. Ct. App. 2001)).  Undoubtedly, whether the enrichment received by Defendants in our case was just will turn in part, if not entirely, on whether each class member authorized the challenged service and whether each class member received and benefitted from that service.  Likewise, I.C. § 24-5-19-3 provides that a claim against Defendants exists if goods or services were billed that were "not yet ordered" by a class member.  See I.C. § 24-5-19-3 ("A person may not, with intent to deceive, knowingly or intentionally send, deliver, or transmit a bill, an invoice, or a statement of account due, or a writing that could reasonably be interpreted as a bill, an invoice, or a statement of account due, to solicit payment of money by another person for goods not yet ordered or for services not yet performed and not yet ordered.")  Thus, based on the reasoning in Brown, it is clear that this court would also be required to make individual determinations as to whether each class member victim had authorized the billing service.  The necessity of this kind of individualized assessment makes class certification inappropriate.[5]

In support of its motion for class certification, Plaintiff directs us to Stammco, LLC v. United Telephone Co. of Ohio, No. F-07-024, 2008 Ohio App. LEXIS 3243 (Ohio Ct.

---

[5]Because Plaintiff has sought certification only pursuant to Fed. R. Civ. P. 23(b)(3), we need not consider other Rule 23(b) avenues by which certification may have been appropriate. Furthermore, because we have found that Plaintiff has failed to show that certification is appropriate pursuant to Rule 23(b), we need not consider whether Plaintiff has established the additional requirements imposed by Rule 23(a).

App. Aug. 1, 2008) and <u>Beattie v. Centurytel, Inc.</u>, 511 F.3d 554 (6th Cir. 2007). Plaintiff contends that these cases in which the trial courts granted certification are analogous to our case. In <u>Stammco</u>, the Ohio Court of Appeals affirmed the trial court's certification of a class of telephone service customers who were billed for charges on their local telephone bills as a result of "a standardized policy of not requiring written authorization from Ohio telephone customers before placing third-party charges against a customer's account." <u>Stammco, LLC</u>, 2008 Ohio App. LEXIS 3243, at **14. Significant is the fact that the Ohio Supreme Court reversed that decision by its Court of Appeals and remanded the case to the trial court to clarify the class definition, because the identity of the entity to whom the individual customers/plaintiffs were to have given authorization for the charges at issue was not disclosed and further the form that authorization should have taken was not spelled out. <u>Stammco, LLC v. United Telephone Co. of Ohio</u>, 125 Ohio St. 3d 91, 94-95 (2010).

Plaintiff's reliance on <u>Beattie v. Centurytel, Inc.</u> is also unpersuasive. 511 F.3d 554 (6th Cir. 2007). In <u>Beattie</u>, a group of consumers alleged that the defendant company had used deceptive billing practices to bill them for an optional wire maintenance program without their knowledge or permission. Plaintiff asserted claims for various violations of federal and state law, including a violation § 201(b) of the Federal Communications Act, as well as for unjust enrichment and a violation of the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 et seq. The district court certified the class and the Sixth Circuit affirmed. The Sixth Circuit noted, however, that it was unclear whether the certification pertained to all of the plaintiff's claims or only those brought under federal

statutes. <u>Beattie</u>, 511 F. 3d at 567-68. Thus, the Sixth Circuit did not decide whether certification was proper as to Plaintiff's state law claims, which is significant because only state law claims are before us here. <u>Id</u>.

Accordingly, we hold that, because common questions of law or fact do not predominate over the issues affecting individual members of the proposed classes, we must and do therefore deny Plaintiff's motion for class certification.

## II.    <u>Summary Judgment</u>

Defendant ESBI's October 19, 2009, Motion for Summary Judgment was filed concurrently with its Brief in Opposition to Plaintiff's Motion for Class Certification. [Docket No. 82]. ILD filed its Motion for Summary Judgment on August 26, 2010. [Docket No. 139]. As appropriate and where possible, we address Defendants' motions together below.

### Standard of Review

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. <u>See</u> <u>id.</u> at 255. However, neither the "mere existence of

some alleged factual dispute between the parties," id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

**Application of the Voluntary Payment Doctrine**

Both ESBI and ILD assert that Plaintiff's claims are subject to summary judgment because they are barred by the voluntary payment doctrine. In 2004, the Indiana Supreme Court extensively discussed this doctrine, summarizing the applicable rule as follows: "Money voluntarily paid *in the face of a recognized uncertainty as to the existence or extent of the payor's obligation to the recipient* may not be recovered, on the ground of "mistake," merely because the payment is subsequently revealed to have exceeded the true amount of the underlying obligation." Time Warner Entm't Co., L.P. v. Whiteman, 802 N.E.2d 886, 892 (Ind. 2004) (quoting Restatement (Third) of Restitution & Unjust Enrichment § 6 cmt. e (Tentative Draft No. 1, 2001))(emphasis in original). In Time Warner, the plaintiffs disputed certain late fees that they had paid to their cable company. The Indiana Supreme Court reversed an adverse summary judgment ruling against them, holding that there was a genuine issue of material fact with regard to whether plaintiffs had faced such a recognized uncertainty at the time the payments at issue were made. 802 N.E.2d at 892. Applying the same reasoning as the Court in Time Warner, we, nonetheless, come to a different conclusion in the case now before us. Unlike the plaintiffs in Time Warner, we hold that Lady Di's has failed to create such an issue of material fact so as to defeat Defendants' motions for summary judgment.

Both ESBI and ILD argue that the voluntary payment doctrine is clearly applicable to Plaintiff, based on Lady Di's President and 30(b)(6) witness Ms. Markin-Venn's concession that she recognized a potential dispute regarding the October 2008 charges but

nonetheless voluntarily paid them.  Plaintiff argues that because Ms. Markin-Venn did not

know that ESBI, ILD, and AT&T failed to possess the required authorization pursuant to the

Administrative Code, the voluntary payment doctrine does not apply.  Plaintiff relies on yet

another iteration of the <u>Time Warner</u> holding, namely, that "money voluntarily paid *with a*

*full knowledge of all the facts*, and without fraud or imposition on the payor, cannot be

recovered back, although it was not legally due."  802 N.E.2d at 889.  As Defendant ESBI

correctly notes, however, this argument and the  resultant confusion it generated were what

spurred the Supreme Court to clarify the rule to eliminate the "full knowledge of the facts"

language.  As the Supreme Court explained, "[W]hen properly employed, a reference to

"voluntary payment" is judicial shorthand for a truth of common experience: that a person

must often choose to act on the basis of imperfect knowledge, accepting the risk that further

information . . . may reveal the choice to have been less than optimal."  802 N.E.2d at 892.

Thus, it is the payor's "recognition" of not knowing whether or not a payment is owed that

makes the doctrine applicable.  <u>Id.</u>

In our case, at the very least, Plaintiff's recognition of the uncertainty of its obligation

to pay is clear.  Ms. Markin-Venn testified that, upon reviewing her October 2008 bill, she

noticed the charges at issue and contested them before she paid them.  Markin-Venn Dep.

at 47-53 (Q: "Had you already paid [the bill] when you reviewed it?" A: "I don't think so,

no, because I call them up and said, 'What is this?'. . . .").  This evidence is uncontested in

the record before us.  Plaintiff attempts to hang its hat on the fact that Ms. Markin-Venn was

not aware that ESBI and ILD lacked appropriate authorization for placing these charges on

the phone bill as required by the Administrative Code.  As explained above, however, possession of full and accurate  knowledge of Defendants' legal obligation is irrelevant to the application of the voluntary payment doctrine.  Because Plaintiff's uncertainty about its obligation to pay the charges by ESBI and ILD did not preclude its decision to pay them anyway, the voluntary payment doctrine as enunciated by the Indiana Supreme Court bars recovery of those payments by Plaintiffs.

Interestingly, Plaintiff has not argued that application of the voluntary payment doctrine is limited only to those payments made after Ms. Markin-Venn noticed the charges. Ms. Markin-Venn testified that she believed the charges from both ILD and ESBI had been on her bills since the preceding April or May.  Markin-Venn Dep. at 66, 86.  Apparently, ILD began transferring charges on behalf of ABS to Plaintiff in May 2008 and continued to do so  through October 2008 ( ILD Resp. to Pl.'s First Set of Interrogatories at Resp. No. 13), but the evidence of the call detail provided by Plaintiff reflects that Plaintiff was billed via ESBI only in August, September, October, November, and December 2008.  Pl.'s Ex. A8, ESBI LD 00027.  Because Ms. Markin-Venn testified that she didn't "catch" the charges until she  reviewed her October bill (Markin-Venn Dep. at 52), it is clear that Plaintiff did not pay its bill "in the face of recognized uncertainty" until October.  Thus, the doctrine does not apply to foreclose reimbursement of payments made prior to that date.  Regarding the payments Plaintiff may have made prior to October, we must now examine the merits of its unjust enrichment and commercial deception claims.

**Plaintiff's Unjust Enrichment Claim**

As discussed above regarding class certification, to recover under a theory of unjust enrichment a party must show that a measurable benefit has been conferred on a party under such circumstances that retention of the benefit without payment would be unjust. Stoneware, Inc. v. TecServ, Inc., 2009 U.S. Dist. LEXIS 119624, *26 (S.D. Ind. Dec. 21, 2009) (J. Barker)(citing Dominiack Mechanical, Inc. v. Dunbar, 757 N.E.2d 186, 190 (Ind. Ct. App. 2001)). "The proper measure of damages for unjust enrichment is restitution." Allgood v. General Motors Corp., 2006 U.S. Dist. LEXIS 70764, at *106-07 (S.D. Ind. September 18, 2006). "Restitution requires the disgorgement of the benefit received by the defendant." Id. (citing Confold Pacific, Inc. v. Polaris Industries, Inc., 433 F.3d 952, 957-58 (7th Cir. 2006); Rollings v. Smith, 716 N.E.2d 502, 507 (Ind. App. 1999)).

Both ESBI and ILD argue that they are entitled to summary judgment on Plaintiff's unjust enrichment claim because there is no evidence of a measurable benefit that either defendant has unjustly retained. We address these arguments in turn as to each defendant.

ESBI claims that Plaintiff's payments have been refunded in full. Mem. at 23. According to Plaintiff's December 2008 and February 2009 telephone bills, Lady Di was credited $39.95 and $159.80, respectively. ( Lady Di December 2008 AT&T Bill; Lady Di February 2008 AT&T Bill; Markin-Venn Dep. at 95-96.) Together these amounts total $199.75, or, as construed otherwise, five payments of $39.95. As previously noted, the call detail provided by Plaintiff demonstrates that she was billed via ESBI in August, September, October, November, and December, 2008. Pl.'s Ex. A8, ESBI LD 00027. Ms. Markin-Venn testified that she does not know whether ESBI refunded all of the payments she paid but that,

rather than pursuing further negotiations and attempts to obtain appropriate credits, she simply turned the matter over to her lawyers. Markin-Venn Dep. at 96. Plaintiff contends that there is a genuine issue of material fact with regard to whether ESBI received a measurable benefit because: (1) ESBI received payments from LECs based on the amount of charges that it forwarded to them; (2) the credits appear to be for monthly amounts of $39.95, as opposed to the $42.75 Plaintiff was charged; and (3) My Local Reach, not ESBI, was the entity that issued Plaintiff the refund.

We agree with ESBI that, based on the undisputed evidence, it has retained no measurable benefit that Plaintiff can seek to recover on its unjust enrichment claim. Plaintiff cites no specific measurable benefit that ESBI retained at Plaintiff's expense. The amount of the August and September repayments (which are the only payments that remain at issue in light of our application of the voluntary payment doctrine) exceeded any amount due Plaintiff as a refund, regardless of whether the refund was provided by My Local Reach or ESBI.[6] Assuming ESBI (and not My Local Reach) was the beneficiary of this transaction, My Local Reach, not Plaintiff, may be entitled to recover the refunded amount from ESBI. To hold otherwise would allow Plaintiff a double recovery. Likewise, any benefit that AT&T or any other LEC provided to ESBI would be a dispute only between those two

---

[6]ESBI explains the discrepancy between the monthly payment of $42.75 and the five credits that came to Plaintiff in installments of $39.95 as being the result of $2.80 in state sales tax. ESBI Reply at 13-14. Plaintiff's October 2008 AT&T telephone bills is consistent with this explanation. Pl. Combined Appendix, Ex. C1, Lady Di October 2008 AT&T Bill. Even if we were to conclude that ESBI must refund the tax Plaintiff paid as a result of the transaction, Plaintiff has already received repayment in an amount that exceeds its losses.

parties, and clearly does not involve Plaintiff.

ILD claims that it also fully refunded all charges previously assessed to Plaintiff. ILD Mem. at 21. In support, it proffers the sworn testimony of ILD Vice President of Billing Operations Kathy McQuade which states that "all of the disputed charges from Advanced to Lady Di's have been credited."[7] McQuade Decl. ¶ 11. Furthermore, Ms. Markin-Venn admits that Lady Di's February 2009 AT&T telephone bill reflects a credit from ILD in the amount of $299.70. Markin-Venn Dep. at 67-68; Lady Di February 2008 AT&T Bill. Plaintiff's response to the evidence of the $299.70 credit is limited to the unsubstantiated assertion that there was only one $49.95 credit and that "[i]t is not at all clear that these charges were refunded to the Plaintiff in full." Pl.'s Resp. at 29. Ms. Markin-Venn further

---

[7]Plaintiff requested that the Court disregard this portion of Ms. McQuade's declaration on the grounds that the statements conflict with Ms. McQuade's deposition testimony. "Under Seventh Circuit law, a plaintiff may not introduce a sworn declaration that conflicts with prior deposition testimony in an attempt to create an issue of fact to survive summary judgment." Herring v. Disetronic Med. Sys., 2010 U.S. Dist. LEXIS 54365, at *3-4 (S.D. Ind. June 1, 2010) (J. Barker)(citing Piscione v. Ernst & Young, L.L.P., 171 F.3d 527, 532 (7th Cir. 1999)). Similarly, a party may not introduce a sworn declaration "that includes details the party previously testified he or she could not remember without providing a sufficient explanation as to why those facts were subsequently able to be recalled." Herring, 2010 U.S. Dist. LEXIS 54365, at *3-4 (citing Adusumilli v. City of Chicago, 164 F.3d 353, 360 (7th Cir. 1998); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1210-11 (7th Cir. 1993)). After reviewing Ms. McQuade's testimony, however, we find no such conflict. The deposition testimony that Plaintiff cites as conflicting with the declaration is clearly focused on who (as between ILD, Advanced Business Services, and AT&T) made the decision to issue a refund to Plaintiff, not whether such a refund was actually paid. McQuade Dep. at 112-13. Moreover, although Ms. McQuade could not answer certain questions about Exhibit 9 at her deposition, the declaration explains that Ms. McQuade has knowledge regarding the credits "because [she had] reviewed ILD's records related to the telephone number at issue which are maintained in the regular course of business and are maintained under [her] direction, control and supervision." McQuade Decl. ¶ 11. Such an explanation is consistent and relevant under the circumstances; (we assume, of course, as we must that Exhibit 9 contains the relevant information).

testified that she does not know of any other charges that may be owed to her company from ILD, but that her lawsuit is in a broader sense an attempt by her to seek "justice" for those others who may have also made payments to ILD that were similarly unauthorized. Id. ILD correctly notes, however, that summary judgment is Plaintiff's opportunity to come forward with any evidence that may exist of unrefunded charges. Plaintiff has not done so. Plaintiff argues, alternatively, that ILD has retained a measurable benefit based on payments it may have received from LECs and also because it was ABS who issued the credit to Plaintiff, not ILD. As we discussed with regard to ESBI, we find no compelling basis on which to accept these unsubstantiated contentions.

Plaintiff has failed to create a genuine issue of material fact with regard to ESBI's or ILD's retention of any measurable benefit from these transactions. Accordingly, Defendants' motions for summary judgment on their unjust enrichment claims are entitled to be granted.

**Plaintiff's Statutory Deception Claim**

According to the commercial deception statute under which Plaintiff brings this claim, "a person may not, with intent to deceive, knowingly or intentionally send, deliver, or transmit a bill, an invoice, or a statement of account due, or a writing that could reasonably be interpreted as a bill, an invoice, or a statement of account due, to solicit payment of money by another person for goods not yet ordered or for services not yet performed and not yet ordered." I.C. § 24-5-19-3. The section applies to "a person that sends, delivers, or transmits by mail, private delivery, facsimile transmission, or electronic mail a solicitation offering

goods or services for sale, lease, or rent . . . ."  I.C. § 24-5-19-1.

Both ESBI and ILD seek summary judgment on Plaintiff's deception claim, arguing that the statute does not apply to them and that, in any event, there is no evidence of any "intent to deceive" on their part, as required by the statute.  We begin our analysis by noting that our research discloses no Indiana cases in which these Code sections have been judicially construed.  Thus, we proceed cautiously in our efforts to decide whether, as a matter of law, the statute applies to Defendants.  However, because Plaintiff has offered no evidence whatsoever upon which a reasonable jury could find an intent to deceive on the part of either Defendant, we need go no further in construing the meaning or reach of the applicable statute.

Defendants have proffered evidence establishing that, when they transmitted Plaintiff's billing data to AT&T, they believed the services had been expressly ordered. Specifically, ESBI highlights evidence of their due diligence efforts with vendors with whom they do business, which included confirmation of express customer authorization, monthly monitoring of those vendors, and other confirmation of authorization.  (Coleman Dep. at 18-20, 37-42, 51-78; Due Diligence Checklist for My Local Reach;  Enhanced Services Best Practices Manual.)  ESBI also asserts that when it forwarded the billing data relating to Plaintiff's disputed charges, it had no "intent to deceive"; to the contrary, it acted on the basis of its knowledge and belief "that Plaintiff had authorized those charges." ESBI Reply at 18. Likewise, ILD submits testimony from its Vice President of Billing Operations that it was ILD's practice to require its vendors to have specific authorization from their customers.

McQuade Decl. ¶ 11.

The only evidence Plaintiff cites in rebuttal in an effort to establish an intent to deceive on the part of either Defendant is Defendants' alleged violation of the Administrative Code. With regard to ESBI, Plaintiff maintains that the company's due diligence and monthly monitoring do not comport with the Administrative Code and further that ESBI's assurances in its contracts with AT&T conflict with similar provisions in contracts it has entered into with vendors, such as MLR. Pl.'s Surreply at 4-9. Plaintiff also claims that ILD "trusts" its vendors to possess customers' authorizations and that ILD's contracts with AT&T thus conflict with provisions of their contracts with other vendors, such as ABS. Pl.'s Resp. at 31-35.

Even if true, this evidence fails to establish any genuine issues of material fact that would foreclose summary judgment in Defendant's favor. Plaintiff's arguments, at best, establish Defendants' intent to ignore or violate the Administrative Code, not an intent to deceive Plaintiff, as required under I.C. § 24-5-19-3. Where, as here, Defendants have based their summary judgment motions on evidence establishing a lack of any genuine issues of material fact, Plaintiff is obligated to come forward with "specific facts showing that there is a genuine issue for trial" by references to specific evidence in the record. Fed. R. Civ. Pro. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986); Logan v. Commercial Union Ins. Co., 96 F.3d 971, 978-79 (7th Cir. 1996). This Plaintiff has failed to do, thereby justifying entry of summary judgment in favor of Defendants on the commercial deception claim against them.

## CONCLUSION

For the reasons stated herein, we find that Plaintiff has failed to establish that class certification is appropriate, pursuant to Fed. R. C. P. 23(b) and, thus, Plaintiff's Motion to Certify Class [Docket No. 63] is <u>DENIED</u>. Because the class certification issue was considered and resolved first, which was the gist of Plaintiff's Motion to Defer Ruling on ESBI's Motion for Summary Judgment Pending a Determination of Class Certification [Docket No. 100], that Motion is <u>DENIED</u> as moot. Plaintiff's failure to create a genuine issue of material fact with regard to its claims against ESBI requires that ESBI's Motion for Summary Judgment [Docket No. 82] be <u>GRANTED</u>. Similarly, Plaintiff's failure to create a genuine issue of material fact with regard to its claims against ILD requires that ILD's Motion for Summary Judgment [Docket No. 139] be <u>GRANTED</u>. Judgment shall enter accordingly.

IT IS SO ORDERED

Date: _11/16/2010_

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Robert M. Baker IV
LEWIS WAGNER LLP
rbaker@lewiswagner.com

Dina M. Cox
LEWIS & WAGNER
dcox@lewiswagner.com

23

Scott D. Gilchrist
COHEN & MALAD LLP
sgilchrist@cohenandmalad.com

Gregory F. Harley
BURR & FORMAN LLP
gharley@burr.com

Irwin B. Levin
COHEN & MALAD LLP
ilevin@cohenandmalad.com

Daniel Ryan Roy
BAKER & DANIELS - Indianapolis
drroy@bakerd.com

Richard E. Shevitz
COHEN & MALAD LLP
rshevitz@cohenandmalad.com

Lynn A. Toops
COHEN & MALAD LLP
ltoops@cohenandmalad.com